# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 20, 2005     Decided November 29, 2005

No. 04-1295

INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
PETITIONER

v.

TRANSPORTATION SECURITY ADMINISTRATION,
RESPONDENT

———

On Petition for Review of a Final Order of the
United States Department of Transportation

———

*Katherine A. McDonough* argued the cause for the petitioner. *Roland P. Wilder, Jr.* was on brief.

*Jeffrica Jenkins Lee*, Attorney, United States Department of Justice, argued the cause for the respondent. *Peter D. Keisler*, Assistant Attorney General, and *Michael Jay Singer*, Attorney, United States Department of Justice, were on brief.

Before: HENDERSON, BROWN and GRIFFITH, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: The International Brotherhood of Teamsters (IBT) filed this action to challenge the "Legal Guidance on Criminal History Records Checks" (2004 Guidance) issued by the Transportation Security Administration (TSA) on May 28, 2004. The 2004 Guidance

addresses what constitutes a "conviction" under TSA regulations, which prohibit airline and airport operators from employing in specified positions an individual found to have been convicted within the previous ten years of any one of several listed crimes.[1] The IBT argues that, because the 2004 Guidance defines "conviction" more broadly than did the TSA's original guidance, issued May 23, 2003 (2003 Guidance), the TSA was required to promulgate the 2004 Guidance pursuant to the notice and comment procedures of the Administrative Procedure Act and to publish it in the Federal Register. *See* 5 U.S.C. §§ 552, 553. Because the TSA failed to do so, IBT maintains, the 2004 Guidance must be set aside pending compliance with the required procedures. We conclude that IBT has not satisfactorily established its constitutional standing to bring this action and therefore dismiss its petition for review.

In 2001 the Congress enacted the ATSA which created the TSA with the statutory mandate to "require background checks for airport security screening personnel, individuals with access to secure areas of airports, and other transportation security personnel." 49 U.S.C. § 114(f)(12). The ATSA directs, *inter alia*, that the TSA "shall require by regulation that an employment investigation," including a criminal history record check and review of governmental and international agencies' records, be conducted for any person employed or applying for employment in a position with unescorted access authority either to aircraft or to secured areas of airports. *Id*. § 44936(a), (b). The ATSA further provides that airline and airport operators "may not employ, or authorize or make a contract for the services of" an individual in such a position if "the results of that investigation establish that, in the 10-year period ending on the

---

[1]The regulations were promulgated pursuant to the Aviation and Transportation Security Act (ATSA), Pub. L. No. 107-71, 115 Stat. 597 (2001).

date of the investigation, the individual was convicted (or found not guilty by reason of insanity) of" any of the criminal offenses enumerated in the statute. *Id*. § 44936(b)(1)(B).

On February 22, 2002 the TSA promulgated regulations implementing the statutory criminal investigation directive. *See* 67 Fed. Reg. 8340 (Feb. 22, 2002) (promulgating 49 C.F.R. §§ 1542.209 (responsibilities of airport operators), 1544.229 (responsibilities of airline operators regarding cargo and baggage handling employees) and 1544.230 (responsibilities of airline operators regarding flight crew employees)). The regulations disqualify an applicant or existing employee from specified employment positions if the criminal investigation discloses a "disqualifying criminal offense," that is, if the investigation reveals that the individual, after December 6, 1991, "has been convicted, or found not guilty of by reason of insanity, of any of the disqualifying crimes listed in [49 C.F.R. § 1542.209(d)(1)-(28))] in any jurisdiction during the 10 years before the date of the individual's application for unescorted access authority, or while the individual has unescorted access authority." 49 C.F.R. § 1542.209(d).

On May 23, 2003 the TSA issued the 2003 Guidance "to ensure uniformity in the adjudication of background checks for airport and air carrier workers." 2003 Guidance at 1. It included a nonexclusive list of scenarios the TSA considered to be "convictions." *Id*. at 2. On May 28, 2004 the TSA issued the "updated" 2004 Guidance which expanded the list of conviction scenarios to include the following: "Person enters a plea of *nolo contendere* or guilty followed by a withheld adjudication where the court places defendant on a period of probation." 2004 Guidance at 2. According to the IBT's opening brief, the Teamsters Local 747 office received a copy of the 2004 Guidance attached to a letter dated June 17, 2004 from a lawyer representing a Local 747 member who was suspended from his position as flight engineer because a criminal investigation

revealed he had pleaded no contest to one of the offenses enumerated in TSA regulation 1542.209(d) and had received a withheld adjudication from a Florida state court. According to IBT, someone at Teamsters Local 747 forwarded a copy of the 2004 Guidance to IBT's counsel on July 23, 2004. *Id.* On August 31, 2004, IBT filed a petition for review of the 2004 Guidance, challenging several of its provisions that differed from the 2003 guidance on the ground that the 2004 Guidance was unlawfully promulgated without notice and opportunity to comment or publication. For the reasons set out below, we conclude that IBT failed to establish standing under Article III of the United States Constitution to bring this action and therefore dismiss its petition.

"Because Article III limits the constitutional role of the federal judiciary to resolving cases and controversies, a showing of standing 'is an essential and unchanging' predicate to any exercise of our jurisdiction." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (1996) (*en banc*) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992); internal citation omitted). " 'The "irreducible constitutional minimum of standing contains three elements": (1) injury-in-fact, (2) causation, and (3) redressability.' " *Rainbow/PUSH Coalition v. FCC,* 396 F.3d 1235, 1240 (D.C. Cir. 2005) (quoting *Rainbow/PUSH Coalition v. FCC,* 330 F.3d 539, 542 (D.C. Cir. 2003) (quoting *Defenders of Wildlife,* 504 U.S. at 560-61)). Thus, to demonstrate standing, a petitioner " 'must allege (1) a personal injury-in-fact that is (2) fairly traceable to the defendant's conduct and (3) redressable by the relief requested.' " *Rainbow/Push Coalition*, 396 F.3d at 1240 (quoting *Microwave Acquisition Corp. v. FCC*, 145 F.3d 1410, 1412 (D.C. Cir. 1998); additional quotations omitted). Before us, the petitioner's burden of production on standing is "the same as that of a plaintiff moving for summary judgment in the district court: it must support each element of its claim to standing 'by affidavit or other evidence,' " *Sierra Club v. EPA,* 292 F.3d 895, 899 (D.C. Cir. 2002) (quoting *Defenders of*

*Wildlife,* 504 U.S. at 561), and must thereby "show a 'substantial probability' that it has been injured, that the defendant caused its injury, and that the court could redress that injury," *id.* (quoting *Am. Petroleum Inst. v. EPA,* 216 F.3d 50, 63 (D.C. Cir. 2000)). To satisfy this burden "the petitioner must either identify in [the] record evidence sufficient to support its standing to seek review or, if there is none because standing was not an issue before the agency, submit additional evidence to the court of appeals." *Id.* (citing *Amfac Resorts, L.L.C. v. DOI*, 282 F.3d 818, 830 (D.C. Cir. 2002)). Accordingly, in *Sierra Club* we declared:

> [A] petitioner whose standing is not selfevident [sic] should establish its standing by the submission of its arguments and any affidavits or other evidence appurtenant thereto at the first appropriate point in the review proceeding. In some cases that will be in response to a motion to dismiss for want of standing; in cases in which no such motion has been made, it will be with the petitioner's opening brief . . . .

*Id.* at 900.[2] We further advised that "[a]bsent good cause

---

[2] We reminded IBT of its obligation under *Sierra Club* in a briefing order issued March 14, 2005. The court has proposed to codify *Sierra Club*'s admonition by adding the following provision to District of Columbia Circuit Rule 28:

> 8. **Standing.** In administrative review cases, a petitioner or appellant who is not directly regulated by the agency action under review must present in the opening brief the arguments and evidence establishing its standing. *See Sierra Club v. EPA,* 292 F.3d 895, 900-01 (D.C. Cir. 2002).

Notice of Proposed Circuit Rule Change (D.C. Cir. issued Oct. 6, 2005). We note that violations of all Circuit rules are addressed by District of Columbia Circuit Rule 38 ("When any party . . . or any attorney . . . fails to comply with the FRAP or these rules, . . . the court may . . . impose appropriate sanctions on the offending party, the

shown," a party will not be afforded "opportunity to submit post-argument affidavits further demonstrating [its] standing." *Id*. IBT failed to satisfy *Sierra Club*'s threshold requirement because its standing was not self-evident on the record and it offered no argument or additional evidence to demonstrate its standing.[3]

IBT first addressed its standing at oral argument, in response to questioning by the court. During opening argument, IBT claimed representational standing on behalf of the discharged flight engineer. This claim, however, finds no support in the record. A trade union has representational standing to bring suit on behalf of its members if " '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.' " *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 553 (1996) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)). IBT fails the first prong of this test because it has identified no record evidence whatsoever establishing the flight engineer's disqualification or even his membership in IBT. IBT's counsel cited as evidence of its standing a letter

---

attorney, or both. Sanctions include dismissal for failure to prosecute . . . .). Should the proposed rule be adopted, we would analyze violations under Rule 38 rather than the case law on which we base our decision today. *See, e.g.*, *Barber v. Am. Sec. Bank*, 841 F.2d 1159, 1162 (D.C. Cir. 1988) (holding that "egregious disregard of the court's processes" warranted dismissal under Rule 38).

[3]We also question whether IBT has prudential standing; its failure to introduce evidence of its injury raises doubt whether it qualifies as "a person *disclosing* a substantial interest" in the 2004 Guidance, as required under 49 U.S.C. § 46110(a) (emphasis added).

appended to its opening brief alleged to have been sent to IBT by the flight engineer's lawyer but the heavily redacted copy of the letter submitted makes no mention of the flight engineer or his disqualification. *See* Pet'r Br. Addendum at 25.

On rebuttal counsel offered as an alternative standing theory that IBT's injury resulted from the TSA's failure to provide public notice of the 2004 Guidance, thereby depriving it of the opportunity to comment thereon. This theory fails for the same reason as its first. It is true that in a procedural rights case the burden to show imminence and redressability of injury may be lessened but the complainant must nonetheless show it has itself "suffered personal and particularized injury." *Fla. Audubon Soc'y v. Bentsen,* 94 F.3d 658, 664 (D.C. Cir. 1996) (quoting *Defenders of Wildlife,* 504 U.S. at 572 n.7). And the "mere inability to comment effectively or fully, in and of itself, does not establish an actual injury," *United States v. AVX Corp.,* 962 F.2d 108, 119 (1st Cir. 1992); *see Fla. Audubon Soc'y,* 94 F.3d at 664 ("[T]he plaintiff must show that the government act performed without the procedure in question will cause a distinct risk to a particularized interest of the plaintiff. The mere violation of a procedural requirement thus does not permit any and all persons to sue to enforce the requirement." (citing *Defenders of Wildlife,* 504 U.S. at 572-73; *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 223 (1974); *Capital Legal Found. v. Commodity Credit Corp.,* 711 F.2d 253, 258-60 (D.C. Cir. 1983)). Thus, to establish standing based on its inability to comment, an organization must show "that at least one of [its] members is 'suffering immediate or threatened injury as a result of the challenged action.'" *Id*. (quoting *Warth v. Seldin,* 422 U.S. 490, 511 (1975)). As noted, IBT made no such showing when it filed its opening brief, as *Sierra Club* requires if standing is not self-evident.

Following oral argument, IBT filed a motion to supplement the appendix with additional documents attached, including the flight engineer's declaration. IBT argued its motion should be

granted because it had a "reasonable" belief that its standing was self-evident, relying on this court's decision in *American Library Ass'n v. FCC*, 401 F.3d 489, 492 (D.C. Cir. 2005). In *American Library Ass'n*, the court concluded that the petitioners "reasonably believed" their standing was self-evident based in part on portions of the evidentiary record, which the petitioners cited at oral argument and in a post-argument submission, and which gave "some indications that petitioners' members will suffer concrete and particularized injuries" from the challenged rule. 401 F.3d at 491. In this case, however, IBT could not have reasonably believed its representational standing was self-evident given the complete absence in the record of any evidence of the flight engineer's union membership or his employment disqualification.[4]

For the foregoing reasons, the petition for review is dismissed.

*So ordered.*

---

[4]In any event, IBT's post-argument proffer does not clear up the standing issue. *Cf. Communities Against Runway Expansion, Inc. v. FAA*, 355 F.3d 678, 685 (D. C. Cir. 2004) (supplemental declarations submitted with reply brief made organization's member's injury "patently obvious"). The additional documents aver that the flight engineer "was a member of Teamsters Local 747. . . until [he] was terminated by [his employer] on May 19, 2004," Decl. of Juan Carlos Diaz at 1, but are silent on whether he was a member of Teamsters Local 747, much less of IBT, when IBT filed its petition for review with the court on August 31, 2004. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC)*, 528 U.S. 167, 190 (2000) ("[I]f a plaintiff lacks standing at the time the action commences," it is not entitled to a "federal judicial forum" (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998)).